## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ASTRAZENECA LP, ASTRAZENECA AB, and ASTRAZENECA PHARMACEUTICALS LP, | ) ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) | Civil Action No. 15-1013-RGA |
| MICRO LABS LIMITED AND MICRO LABS USA, INC., | ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THEIR COMPLAINT PURSUANT TO FED. R. CIV. P. 41(a)(2) AND DEFENDANTS' COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

Charles E. Lipsey (admitted *pro hac vice*)
Ryan P. O'Quinn (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700
Charles.Lipsey@finnegan.com
Ryan.O'Quinn@finnegan.com

Mark J. Feldstein (admitted *pro hac vice*)
Jill K. MacAlpine (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000
Mark.Feldstein@finnegan.com
Jill.MacAlpine@finnegan.com

DATED: February 1, 2016

MCCARTER & ENGLISH, L.L.P.

Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Plaintiffs*

ME1 21925916v.1

## TABLE OF CONTENTS

I.       INTRODUCTION ...........................................................................................................1

II.      ARGUMENT ................................................................................................................1

     A.      Defendants Do Not Contest that Plaintiffs' Complaint Should Be Dismissed
        Pursuant To Rule 41(a)(2) ...........................................................................................1

     B.      Dismissing Defendants' Counterclaims Would Terminate this Action, Return the
        Parties to the *Status Quo*, and Promote Judicial Economy ......................................3

     C.      The Court Need Not Reach Defendants' "Alternative" of Amending Their
        Counterclaims ..............................................................................................................6

III.     CONCLUSION .............................................................................................................7

ME1 21925916v.1

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................6, 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................6, 7

*DuToit v. Strategic Minerals Corp.,*
    136 F.R.D. 82 (D. Del. 1991)............................................................................2

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.,*
    693 F. Supp. 2d 409 (D. Del. 2010)..................................................................4

*Reach & Assocs., P.C. v. Dencer,*
    No. 02-1355-JJF, 2004 WL 253487 (D. Del. Feb. 9, 2004) ............................2

*Senju Pharm. Co., Ltd. v. Apotex, Inc.,*
    921 F. Supp. 2d 297 (D. Del. 2013)..................................................................6

*Shoulder Innovations, LLC v. Ascension Orthopedics, Inc.,*
    No. 11-810 (JEI/AMD), 2012 WL 2092379 (D. Del. Jun. 8, 2012)..................2

*Trueposition Inc. v. Polaris Wireless Inc.,*
    No. 12-646-RGA, 2015 WL 1738381 (D. Del. Apr. 7, 2015)...................3

*Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.,*
    No. 11-1266-GMS, 2013 WL 247041 (D. Del. Jan. 23, 2013) ...................3

**FEDERAL STATUTES**

21 U.S.C. § 355..........................................................................................................5

21 U.S.C. § 355(j)(5)(C)(i)(I) ....................................................................................5

21 U.S.C. § 355(j)(5)(C)(i)(III)..................................................................................5

28 U.S.C. § 2201(b) ...................................................................................................5

**COURT RULES**

Fed. R. Civ. P. 12(b)(6)..............................................................................................7

Fed. R. Civ. P. 41(a)(2)......................................................................................1, 2, 7

ME1 21925916v.1

I.      INTRODUCTION

When Defendants Micro Labs Limited and Micro Labs USA, Inc. (collectively, "ML" or "Defendants") chose to copy AstraZeneca's BRILINTA® (ticagrelor) drug products before the expiration of AstraZeneca's Orange Book-listed U.S. Patent No. 8,425,934 ("the '934 patent"), they chose to not provide an "Offer of Confidential Access" ("OCA") with their operative Notice Letter.  ML's strategy prevented AstraZeneca from considering ML's FDA submission before filing suit, but also prohibited ML from bringing an independent declaratory judgment action of its own.

While AstraZeneca has since sought to return the parties to their pre-suit *status quo*, first by stipulation and then by this Motion to Dismiss, ML instead seeks an undeserved windfall in the form of a judgment on the merits or a favorable settlement.  But ML's Opposition does not justify refusing to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 41(a)(2).   Nor does ML legitimize its attempts to leverage improperly pled declaratory judgment counterclaims into a more favorable position than other defendants in this case.  While Plaintiffs do not oppose Defendants' "alternative" proposal to amend their counterclaims, Plaintiffs respectfully submit that the better use of judicial economy is to instead terminate this action without prejudice pursuant to this Court's broad discretion under the Declaratory Judgment Act.

II.     ARGUMENT

A.      Defendants Do Not Contest that Plaintiffs' Complaint Should Be Dismissed Pursuant To Rule 41(a)(2)

 ML's Opposition fails to provide any basis as to why Plaintiffs' request to dismiss their own Complaint pursuant to Fed. R. Civ. P. 41(a)(2) should not be granted.  Rather than establishing any legal prejudice—the standard for declining dismissal—it is clear that ML will suffer none whatsoever.  Indeed, in ML's view, there will be no prejudice if this entire case is

- 1 -

dismissed, as ML asserts that it can independently file a Declaratory Judgment Action irrespective of Plaintiffs' Complaint.  (D.I. 20 at 7 ("If Plaintiffs did not sue after being given Confidential Access, Defendants could have sued Plaintiffs for a declaratory judgment in a jurisdiction of its choice in order to resolve the obstacle of the Orange Book listed patent.").)

Defendants' brief attempt to distinguish prior Delaware case law regarding dismissals under Rule 41(a)(2) is unavailing.  While ML attempts to find minor procedural variations between *Reach & Assocs.* and *DuToit* versus the present facts, the alleged differences are immaterial.  There can be no question that ML must—but cannot—demonstrate that it will suffer "plain legal prejudice" by a dismissal without prejudice.  *Reach & Assocs.*, 2004 WL 253487 at *1-2.

*Shoulder Innovations,* cited by Defendants, does not change the "plain legal prejudice" standard or provide any reason for this Court to refrain from the requested dismissal under Rule 41(a)(2).  Defendants' suggestion that that *Shoulder Innovations* is about "FDA approval" and requires this Court to maintain Plaintiffs' claim here is factually incorrect.  (D.I. 20 at 6.)  Legal prejudice was found in *Shoulder Innovations* because the defendant had already sold the accused product, had "approximately 1,500 units in inventory, [] that such units would re-enter the market but for the instant suit," and "would 'still be pursuing the marketing and selling of the accused products.'"  No. 11-810 (JEI/AMD), 2012 WL 2092379, at *1-2, *2 n.3.  *Shoulder Innovations* is thus irrelevant to the present Hatch-Waxman context, where no product has been marketed or sold and ML itself admits FDA approval for sale cannot occur prior to 2021.  (D.I. 20 at 8.)  ML faces none of the potential prejudice addressed in *Shoulder Innovations.*

Accordingly, Plaintiffs respectfully submit that the Court should exercise its "sound discretion" to grant motions for voluntary dismissal under Rule 41(a)(2), and dismiss Plaintiffs'

- 2 -

Complaint without prejudice.  *Trueposition Inc. v. Polaris Wireless Inc.*, No. 12-646-RGA, 2015 WL 1738381, at *1 (D. Del. Apr. 7, 2015).

### B. Dismissing Defendants' Counterclaims Would Terminate this Action, Return the Parties to the *Status Quo*, and Promote Judicial Economy

In its Opposition, Defendants make every attempt to excuse away their decision to not provide access to ML's ANDA in a timely manner, access that could have prevented this case from ever being filed.  However, it is clear that there is *no* excuse for Defendants refusing to accept a stipulated return to the pre-suit *status quo* other than as leverage for an unwarranted advantage.  AstraZeneca respectfully submits that, under these facts, the Court should decline to exercise jurisdiction over ML's declaratory judgment claims because "its resources or those of the litigants would [not] be well spent by permitting [the] action to proceed."  *Woodbolt Distribution, LLC v. Natural Alternatives Int'l, Inc.*, No. 11-1266-GMS, 2013 WL 247041, at *3 (D. Del. Jan. 23, 2013).

ML admits, as it must, that its operative September 21, 2015, Notice Letter did not include an OCA.  (D.I. 20 at 3.)  It then proffers a range of excuses attempting to divert attention from its strategic decision, (*id.* at 3, 6-8), none of which change the fact that ML would <u>not</u> have been entitled to independently file a Declaratory Judgment action.  Nor does ML provide reason why the Court should not decline to exercise jurisdiction.

First, ML attributes the decision to withhold an OCA to itself, as if it were not advised by counsel.  (*See, e.g.,* D.I. 20 at 3 ("Micro Labs itself (not through counsel) sent a detailed statement…."); D.I. 21 at ¶ 3 ("[Defendants' counsel] first learned that any notice letter had been sent by Micro Labs when it was contacted by plaintiffs' counsel by email on October 21, 2015, and it did not have a copy of the letter that had been sent.").)  While these assertions seem surprising since ML's "detailed statement" expressly includes Defendants' counsels' names and

- 3 -

contact information, (*see* D.I. 21-1 at 23), attributing the decision to ML in no way changes the

fact that ML did not offer an OCA with its operative Notice Letter or the consequences that flow

therefrom.  Nor does attributing the decision to ML excuse Defendants' subsequent

unwillingness to cooperate with Plaintiffs' attempts to limit the burden on this Court.

      Second, ML repeatedly asserts that its belated November 2, 2015, OCA somehow

unwinds the consequences of its original decision to withhold one.  (*E.g.*, D.I. 20 at 7 ("Plaintiffs

argument also fails because they did receive an offer of Confidential Access on November 2,

2015.").)  This argument—unsupported by any case law whatsoever—ignores the statutory

requirements placed on AstraZeneca and frustrates the function of the Hatch-Waxman Act.

      In fact, there is no dispute that receipt of a Notice Letter triggers a 45-day clock for an

NDA holder to sue an ANDA filer.  (*See* D.I. 16 at 14.)  In this case, the belated OCA provided

by ML was not proffered until barely 48 hours of that 45-day period remained.  At no time did

ML ever attempt to withdraw its original Notice Letter, offer to restart the 45-day clock, or

otherwise mitigate its failures in any manner.  In other words, ML did <u>not</u> later obtain the right to

an independent Declaratory Judgment that it had originally waived.

      ML also, without support, accuses Plaintiffs of "disregard of the clear purpose of the

Hatch-Waxman Act."  (D.I. 20 at 1.)  Yet it is ML's actions—failing to provide an OCA, and

only at the last moment offering one with unreasonable terms—that contravene the Act.  *See In*

*re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 693 F. Supp. 2d

409, 417 (D. Del. 2010) (lack of an OCA or one with unreasonable terms "would allow an

ANDA filer to frustrate the Hatch–Waxman system by… unilaterally withholding information

about its accused product until the 45–day window for filing suit lapses.").

While ML is correct that there is no mandatory requirement to provide an OCA with a notice letter (D.I. 20 at 6), it misapplies the law to the facts here.  The statute plainly states that "*[n]o action* may be brought under section 2201 of Title 28, by an [ANDA filer] for a declaratory judgment" unless "*the* notice [letter] was *accompanied by* a [offer of confidential access] described in subclause (III)."  21 U.S.C. § 355(j)(5)(C)(i)(I), (III) (emphases added).  Here, "the" Notice Letter that started the 45-day clock is ML's September 21, 2015, letter, which Defendants freely admit was not "accompanied by" an OCA.  (D.I. 20 at 3.)  Had Plaintiffs not sued within this 45-day period, Defendants would have had no ability to resort to a declaratory action.  The statute, and the Declaratory Judgment Act itself, specifically forbid it.  21 U.S.C. § 355(j)(5)(C)(i)(I), (III); 28 U.S.C. § 2201(b) (referring to the sections of the Federal Food, Drug, and Cosmetic Act codified at 21 U.S.C. § 355 as creating "limitations on actions brought with respect to drug patents.").  The November 2, 2015, "OCA" sent six weeks after the Notice Letter—and only in response to Plaintiffs' urging to reduce the issues before this Court—cannot change that law or those facts.

ML's contention that its Declaratory Judgment counterclaims should be heard because "Plaintiffs recognize that the Micro Labs ANDA product at least does not infringe the '934 patent" (D.I. 20 at 7) is nothing but an attempt to profit from its misdeed.  This argument, in fact, fully reveals ML's improper motivation and strategy: having catalyzed the initial suit by strategically withholding an OCA and then only providing its ANDA weeks later after being sued, ML maintains that they are now entitled to "a covenant not to sue on that specific formulation."  (*Id.*)  They also hold out the threat of "a motion for summary judgment" (*id.* at 10-11), promising still more piling of paper and seeking precedent over other defendants in this case

who followed the spirit and letter of the Hatch-Waxman Act.  Had ML simply provided an OCA with its operative Notice Letter, all of the current and ongoing burdens could have been avoided.

Notably, ML's purported harm and "severe" prejudice are presented hypothetically and in the future tense.  ML allegedly "*will* expend time and effort" and "*would* have time to modify its formulation" to one it knows would be non-infringing.  (*Id.* at 8 (emphases added).)  The word "if" appears no fewer than six times in the Opposition's section on prejudice.  (*Id.* at 8-9.)  What is not hypothetical, and what the Opposition loudly ignores, is that Defendants want an unwarranted reward for their strategic gamesmanship: a covenant, a dismissal with prejudice, or summary judgment.

Accordingly, AstraZeneca respectfully submits that this Court should exercise its discretion to decline to hear ML's counterclaims.  Declining to hear ML's counterclaims would fully dispose of this case and would be the best use of judicial economy and resources.

### C.  The Court Need Not Reach Defendants' "Alternative" of Amending Their Counterclaims

ML makes no substantive effort to argue that its declaratory judgment counterclaims meet the pleading standards set forth by the Federal Rules and by case law that is binding on this Court.  In fact, ML cites no case law at all in the section of its Opposition devoted to defending the plausibility of its counterclaims.

Instead, ML devotes two paragraphs of attorney argument to trying to distinguish the principles of *Twombly* and *Iqbal*, and summarily concludes that "Plaintiffs are fully informed of the details of the asserted grounds of patent invalidity and non-infringement by means of the Notice Letter even before the action is commenced."  (D.I. 20 at 9-10.)  This argument has been specifically rejected in Delaware.  *See Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 302-03 (D. Del. 2013) (dismissing invalidity counterclaims for failure to meet the

*Twombly/Iqbal* standard despite defendant's argument that ANDA "notice letters… provide [plaintiff] with abundant detail of the general bases of [defendant's] invalidity contentions").

Apparently recognizing the weakness of their counterclaims, ML proposes "[a]lternatively" to seek leave to amend them.  (D.I. 20 at 9-10; *see also* D.I. 19.)  While Plaintiffs do not oppose granting ML leave to amend, cosmetic updates to Defendants' pleading will not resolve the other issues raised in AstraZeneca's Motion to Dismiss.  Plaintiffs respectfully submit that the Court need not reach a decision on ML's Cross-Motion (D.I. 19), and may exercise its discretion now to terminate this action in its entirety.

## III.  CONCLUSION

For the reasons of record, as supplemented above, Plaintiffs respectfully request that this Court dismiss Count I of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 41(a)(2), without prejudice.  Plaintiffs additionally respectfully request that ML's counterclaims be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or that the Court alternatively decline to hear those counterclaims under its discretion granted it by the Declaratory Judgment Act.

ME1 21925916v.1

DATED: February 1, 2016                     Respectfully submitted,

                                            MCCARTER & ENGLISH, L.L.P.

                                            /s/ Daniel M. Silver
                                            Michael P. Kelly (#2295)
                                            Daniel M. Silver (#4758)
                                            Benjamin A. Smyth (#5528)
                                            Renaissance Centre
                                            405 N. King Street, 8th Floor
                                            Wilmington, DE 19801
                                            (302) 984-6300
                                            mkelly@mccarter.com
                                            dsilver@mccarter.com
                                            bsmyth@mccarter.com

                                            *Attorneys for Plaintiffs AstraZeneca AB,
                                            AstraZeneca Pharmaceuticals LP, and
                                            AstraZeneca LP*

OF COUNSEL:

Charles E. Lipsey (admitted *pro hac vice*)
Ryan P. O'Quinn (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
        GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700
Charles.Lipsey@finnegan.com
Ryan.O'Quinn@finnegan.com

Mark J. Feldstein (admitted *pro hac vice*)
Jill K. MacAlpine  (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
        GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, DC 20001
(202) 408-4000
Mark.Feldstein@finnegan.com
Jill.MacAlpine@finnegan.com

- 8 -